## AUFFMORDT *v.* HEDDEN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 78.   Argued November 14, 17, 1890. — Decided December 8, 1890.

On a reappraisement by a merchant appraiser and a general appraiser,
   under § 2930 of the Revised .Statutes, the valuation of goods entered in
   March, 1886, was raised, and the importer paid thereon additional duties,
   for which he sued the collector, after protest and appeal. At the trial,
   the plaintiff put in evidence chapter 3, part 3, articles 447 to 506, and
   chapter 5, part 8, articles 1399 to 1410, and 1415 to 1417, of the general
   regulations under the customs and navigation laws published by the
   Treasury Department in 1884; and extracts from the instructions issued
   for the guidance of officers of the customs and others concerned, by the
   Secretary of the Treasury, under date of July 1, 1885, being instructions
   of June 9, 1885, and June 10, 1885. The importer had asked for the
   reappraisement, and the collector selected the merchant appraiser. He
   took the prescribed oath in regard to the goods in question. The
   defendant had a verdict in respect of the additional duties, under the
   direction of the court, and the importer had a judgment in respect of
   another matter: On a writ of error: *Held,*
   (1) The instructions of the Treasury Department gave the importer all
        the rights to which he was entitled, and were not repugnant to that
        provision of §§ 2902 and 2930 which required the use of "all reason-
        able ways and means," in appraising, and the proper rights of the
        importer were accorded to him in this case;
 · (2) The question of the dutiable value of the merchandise was not to
        be tried before the appraisers as if it were an issue in a suit in
        a judicial tribunal;
   (3) In a suit to recover back duties paid under protest, the valuation of
        merchandise made by the appraisers is, in the absence of fraud,
        conclusive on the importer, and the question as to the actual value
        of the merchandise cannot be tried;
   (4) The merchant appraiser was not an officer, within the meaning of
        article 2, section 2 of the Constitution, so as to require him to be
        appointed by the President, or a court of law, or the head of a
        department;
   (5) Section 2930 of the Revised Statutes was not unconstitutional in
        making the decision of the appraisers final.

THE case is stated in the opinion.

*Mr. Henry E. Tremain,* (with whom were *Mr. Mason W. Tyler* and *Mr. Alexander P. Ketchum* on the brief,) for plaintiffs in error.

*Assistant Attorneys General Maury* and *Parker* for defendant in error.

· Mr. Justice Blatchford delivered the opinion of the court.

This is an action at law, brought by Clement A. Auffmordt, John F. Degener, William Degener and Adolph William von Kessler, composing the firm of C. A. Auffmordt & Co., against Edward L. Hedden, collector of the port of New York, in the Superior Court of the city of New York, and removed by the defendant into the Circuit Court of the United States for the Southern District of New York, to recover an alleged excess of duties, paid under protest, on goods imported into the port of New York from Bremen by the steamer Main and entered at the custom-house at New York on March 13, 1886. After issue joined, the case was, on the application of the plaintiffs, separated into two causes of action, the present one covering all questions of law and fact involved in the importation, except those which concerned the rates of duty affecting it; and the trial involved in the case now before us proceeded on that basis. It was had before Judge Wheeler and a jury, and resulted in a verdict for the plaintiffs for $10, for which amount, with interest and costs, judgment was entered in July, 1887. The plaintiffs brought a writ of error, claiming that the verdict should have been for a larger sum.

The valuation of the goods on entry was 7070 francs, on which a duty of 50 per cent was paid. Afterwards the appraisers raised the valuation by adding 440 francs 10 centimes to the 7070 francs, making a total valuation of 7510 francs 10 centimes. On a reappraisement by a merchant appraiser and a general appraiser, under section 2930 of the Revised Statutes, the same result was reached; and on this valuation of 440 francs 10 centimes a duty of 50 per cent was paid, amounting to $42. The controversy in the case relates to this $42.

There is no foundation for the suggestion made in the brief for the plaintiffs that they paid any duty upon non-dutiable charges.

Various assignments of error are made which are not espe-cially referred to in the brief for the plaintiffs; and those which are discussed in that brief may be classified under dis-tinct heads.

Section 2930 of the Revised Statutes, under which the principal question in the case arose, was as follows: "If the importer, owner, agent, or consignee of any merchandise shall be dissatisfied with the appraisement, and shall have complied with the foregoing requisitions, he may forthwith give notice to the collector, in writing, of such dissatisfaction; on the receipt of which the collector shall select one discreet and experienced merchant to be associated with one of the general appraisers wherever practicable, or two discreet and experi-enced merchants, citizens of the United States, familiar with the character and value of the goods in question, to examine and appraise the same, agreeably to the foregoing provisions; and if they shall disagree, the collector shall decide between them; and the appraisement thus determined shall be final and be deemed to be the true value, and the duties shall be levied thereon accordingly."

At the trial, the plaintiffs put in evidence the following-named parts of the general regulations under the customs and navigation laws, published by the Treasury Department in 1884, namely: Chapter 3, part 3, articles 447 to 506, both inclusive; chapter 5, part 8, articles 1399 to 1410, both inclu-sive, and articles 1415 to 1417, both inclusive; also, extracts from instructions issued for the guidance of officers of the cus-toms and others concerned, by the Secretary of the Treasury, under date of July 1, 1885, known as Treasury Department Document No. 712, being instruction of June 9, 1885, p. 245, No. 6957; instruction of June 10, 1885, p. 249, No. 6959; and instruction of July 20, 1885, p. 305, No. 7029.

Of the general regulations of 1884, above referred to, those which are material in this case are set out in the margin.[1]

---

[1] " Art. 459. It is lawful for the appraisers, or the collector and naval officer, as the case may be, to call before them and examine, upon oath or affirmation, any owner, importer, consignee, or other person, touching any matter or thing which they may deem material in ascertaining the true

In the present case, the plaintiffs filed protests and appeals to the Secretary of the Treasury on the 29th of April, 1886.

---

market value or wholesale price of merchandise imported, and to require the production, on oath or affirmation, to the collector or to any permanent appraiser, of any letters, accounts, or invoices in his possession relating to the same, for which purpose they are authorized to administer oaths and affirmations. Such persons are not entitled to compensation. S. 335. And all testimony in writing or depositions thus taken will be filed in the collector's office, preserved for future use or reference, and transmitted to the Secretary of the Treasury whenever he may require the same."

Article 462 provides for the giving of a written notice by the collector to the importer of any addition to value made and certified by the appraisers, and provides for the form of such notice.

"Art. 463. If the importer be dissatisfied with the appraisement he may, if he has complied with the legal requirements, give notice of such dissatisfaction in writing to the collector. This notice must be given in all cases within twenty-four hours, or before the end of the official day after the day on which the collector gave the notice prescribed in the foregoing article, and may be in the following form (R. S. 2930):

"Form No. 102.

" *Importer's Notice to Collector Claiming Reappraisement.*

"———, ——— —, 18 —.

" SIR : As I consider the appraisement made by the United States appraisers too high on ———, imported by ——— ———, in the ———, from ———, I have to request that the same may be reappraised pursuant to law with as little delay as your convenience will permit.

"——— ———.

"——— ———, collector of the customs."

Articles 464 and 465 provide for a special report of the local appraisers to be made after such notice claiming a reappraisement is given.

" *Merchant Appraisers.*

"Art. 466. On the receipt of this report the collector will select one discreet and experienced merchant, a citizen of the United States, familiar with the character and value of the goods in question, to be associated with an appraiser at large, if the attendance of such officer be practicable, to examine and appraise the same according to law. R. S. 2930. The selection of merchant appraisers should not be confined exclusively to those connected with foreign imports, but when the requisite knowledge exists should be extended so as to embrace domestic manufacturers and producers and other citizens acting as merchants, although not dealing in foreign merchandise. S. 6111. The merchant thus selected will be notified by the collector of his appointment and of the time and place of the reëxamination.

There was no decision by the Secretary on the appeals, and this suit was brought. The notice of dissatisfaction with the

---

The appraiser at large will be notified of the appeal, of the time fixed for reappraisement, and of the name of the merchant appraiser. The importer will be notified of the time and place, but not of the name of the merchant selected to assist in the reappraisement. If the attendance of an appraiser at large be impracticable, the collector will select an additional merchant, qualified as aforesaid, for the performance of the service.

"Art. 467. The notice of the appointment of the merchant appraiser will be in the following form:

"Form No. 104.

"*Appointment of Merchant Appraiser.*

"Custom House, ——,
"Collector's Office, —— ——, 18—.

"Sir: You are hereby appointed to appraise —— which has been entered at this port, the importer having requested a new appraisement thereof in accordance with the provisions of the several acts of Congress providing for and regulating the appraisement of imported merchandise, and you are requested to appear at ——, at — o'clock on the — day of —— ——, 18—, to appraise the said goods pursuant to law.

"Before entering upon the duty indicated in the above appointment you will please call at this office to take the requisite oath.

"Very respectfully,                    —— —— *Collector.*
"To —— ——, merchant.

"Art. 468. The oath to be taken by the merchant appraiser will be in the following form:

"Form No. 105.

"*Oath of Merchant Appraiser.*

"I, the undersigned, appointed by the collector of —— to appraise ——, imported per, ——, from ——, the importer having requested a new appraisement thereof in accordance with law, do hereby solemnly swear diligently and faithfully to examine and inspect said lot of —— and truly to report, to the best of my knowledge and belief, the actual market value or wholesale price thereof at the period of the exportation of the same to the United States, in the principal markets of the country from which the same was imported into the United States, in conformity with the provisions of the several acts of Congress providing for and regulating the appraisement of imported merchandise.

"—— ——.
"Port of ——.

"Sworn to and subscribed before me this — day of ——, 18—.
"—— ——, *Collector.*

first appraisement was dated March 22, 1886, and contained a request for a reappraisement. Mr. M'Creery was selected by

---

" *Samples, &c., to be Sent to Reappraisers.*

" Art. 469. At the time fixed for reappraisement the collector will send to the appraiser at large and merchant appraiser the invoice or invoices of the merchandise to be examined and appraised. The storekeeper or other officer having charge will deliver to them the samples or packages ordered for examination, and they will proceed to examine and appraise in the manner pointed out by law. The importer or his agent will be allowed to be present and to offer such explanations and statements as may be pertinent to the case. The valuation having been determined, the appraisers will report the same to the collector."

Article 472 provides for a compensation of $5 a day to the merchant appraiser while so employed, to be paid by the party taking the appeal.

" Art. 474. Merchants' appraisements should not assume the nature of a judicial inquiry where judgment is rendered in accordance with the preponderance of testimony on either side, but should be conducted as an investigation by experts, to ascertain whether the local appraiser has reported the true and proper market value of the merchandise in question. S. 2655. Application for copies of proceedings on reappraisements should be made to the general appraiser, who will exercise his discretion in regard to furnishing the same.

" Art. 475. It shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector and naval officer, as the case may be, by all reasonable ways and means in his or their power, to ascertain, estimate, and appraise the true and actual market value and wholesale price, any invoice or affidavit thereto to the contrary notwithstanding, of the merchandise at the time of exportation and in the principal markets of the country whence the same has been imported into the United States, and the number of such yards, parcels, or quantities, and such actual market value or wholesale price of every of them, as the case may require."

" Art. 479. The appraisers or the collector and naval officer, as the case may be, may call before them and examine upon oath any owner, importer, consignee, or other person touching any matter or thing which they may deem material in ascertaining the true market value or wholesale price of any merchandise imported, and require the production, on oath, to the collector or to any permanent appraiser, of any letters, accounts, or invoices in his possession relating to the same. All testimony in writing or depositions taken by virtue of this section shall be filed in the collector's office and preserved for future use or reference, to be transmitted to the Secretary of the Treasury when he shall require the same. R. S. 2922."

" Art. 1407. In cases of appeal general appraisers shall pursue their inquiry into the question of the actual character and dutiable value of the goods under reëxamination in such manner as may they deem most condu-

the collector to be the merchant appraiser, but the notice to
him of his selection was not put in evidence.   The oath signed

---

cive to a just and equitable determination of the question.  It is expected
that they will arrive at that conclusion from their own knowledge and judg-
ments as experts, in substantially the same manner as in the case of orig-
inal appraisements.  See article 474.  S. 2655."

" Art. 1409.  As the examinations of appraisers are made the basis of the
general classification of importations for the imposition and assessment of
duty, it becomes necessary that appraisers shall closely inspect the articles
ordered for ·appraisement, and where they retain doubts concerning the
quality or denomination of articles they·shall submit samples thereof, with
their opinions, to collectors, for transmission, in case of disagreement, to
the Secretary of the Treasury.  R. S. 2949.

" Art. 1410.  Appraisers must rigidly exclude unauthorized persons from
the rooms where goods are awaiting or are under examination for appraise-
ment, and forbid their subordinates to hold communication with interested
persons concerning the goods under appraisement.  R. S. 2949." .

" Art. 1416.  Appraisers are, in cases of reappraisement, to give courteous
and due attention to explanations and statements of importers, in person
or by representative, relating to the subject matter under examination,
but they are to limit the privilege so accorded to one person in each single
case of reappraisement, to receive only statements of fact, to require all
facts to be stated concisely and not argumentatively, and to pursue their
inquiry·into the question of the actual character and dutiable value of the
goods under reëxamination in such manner as they deem most conducive
to a just and equitable determination of the question.  Merchant appraisers
appointed in cases of appeal from the decisions of the customs appraisers·
are also to be governed by this article."

From the instructions of June 9, 1885 : " The law of reappraisement is
precisely the same as that of original appraisement, and there is no author-
ity or justification for the system, which it appears has grown up in your
office, of treating a reappraisement as in the nature of a trial in a court of
law, wherein the reappraising officers sit as judges and render decisions
according to the preponderance of testimony adduced.  The law provides
that the merchant appraiser shall be familiar with the character and value
of the goods in question, and it is presumed that the general appraiser will
have or will acquire such expert knowledge of the goods he is to appraise
as to enable him to intelligently perform his official duty with a due regard
for the rights of all parties and independently of the testimony of inter-
ested witnesses.  The functions of the reappraising board are the same as
those of the original appraisers.  They are themselves to appraise the goods
and not to depend for their information upon the appraisement of so-called
experts in the line of the goods in question.  I am informed that it is the
practice to hold reappraisements on certain days of the week, within the
hours of twelve and three, and that, owing to the number of appeals pending,

by him and sworn to before a deputy collector, on the 8th of
April, 1886, was put in evidence, and was in the following

two or more cases are often heard at the same time by different merchant
appraisers, all acting in conjunction with the general appraiser; that im-
porters and witnesses are permitted to throng the general appraiser's office,
in whose presence the conclusions of the appraising board are often
announced, and that, if such conclusions are not satisfactory to the im-
porter, he is allowed to protest and reargue the case, with a view to a modi-
fication. of the finding, in which he is often successful. It is plain that all
this is a wide departure from the methods of reappraisement contemplated
by the law and regulations, and must necessarily result in injury to the
revenue and general demoralization among officials and importers. The
local appraisers are expected to do their full duty in ascertaining, estimat-
ing, and appraising the true and actual market value or wholesale price of
imported merchandise at the time of exportation, and in the principal mar-
kets of the country whence the same has been imported. When appeals are
taken from the valuation so found, it is expected that the general appraiser
and merchant appraiser selected to act with him will reappraise the mer-
chandise in substantially the same manner as is pursued on original appraise-
ment. Section 2922 of the Revised Statutes authorizes appraisers to call
before them and examine under oath any owner, importer, consignee, or
other person, touching anything which they may deem material in ascertain-
ing the true market value or wholesale price of any merchandise imported.
It is by this law that appraisers are authorized to summon witnesses, but
there is no authority for the public examination of such witnesses, or their
cross-examination by importers, or counsel employed by such importers.
The appraising officers are entitled to all information obtainable concerning
the foreign market value of goods under consideration, but such information
is not public property. It is due to merchants and others called to give such
information that their statements shall be taken in the presence of official
persons only. It must often occur that persons in possession of facts
which would be of value to the appraisers in determining market values are
deterred from appearing or testifying, by the publicity given to reappraise-
ment proceedings. Article 1416 of the Regulations enjoins appraisers to
give courteous and due attention to the explanations and statements of im-
porters, in person or by representative, relating to the subject matter under
investigation, but they are to limit the privilege so accorded to one person
in each single case of reappraisement, to receive only statements of fact,
and to require all facts to be stated concisely and not argumentatively. This
regulation has been so construed that attorneys-at-law and custom-house
brokers have appeared and acted as representatives of the importer on
reappraisement. Such a construction is erroneous. The representative of
the importer in such cases should be his employé or salesman — some per-
son belonging to his house familiar with the facts touching the subject
matter under consideration. There is no office here for the lawyer or cus-

terms : " I, the undersigned, appointed by the collector of the
district of New York to appraise a lot of manufactures of silk
and cotton imported per steamship Main from Bremen, the
importer having requested a new appraisement thereof in
accordance with law, do hereby solemnly swear diligently and
faithfully to examine and inspect said lot of manufactures of
silk and cotton, and truly to report, to the best of my knowl-
edge and belief, the actual market value or wholesale price
thereof, at the period of the exportation of the same to the
United States, in the principal markets of the country from
which the same was imported into the United States, in con-
formity with the provisions of the several acts of Congress
providing for and regulating the appraisement of imported
merchandise. So help me God." The plaintiffs were notified
by the collector, on the 20th of April, 1886, to pay the addi-
tional duty. This was after the reappraisement, and the addi-
tional duty was paid, they having previously paid $10 for the
merchant appraiser's compensation.

---

tom-house broker, and such persons, as well as all others not officially called
before the appraisers, should be excluded. This Department expects that
all appraising officers, including the general appraisers, will coöperate in all
proper measures for the suppression of undervaluations, and be just and
uniform in the appraisement of imported merchandise, to the end that the
tariff laws may be strictly enforced, and fair and honorable merchants pro-.
tected from loss by the dishonest practices of unscrupulous importers."

From the instructions of June 10, 1885 : "Experts have been employed
at several of the foreign consulates, for the purpose of enabling the con-
sul to obtain and transmit to appraisers information as to cost of pro-
ducing silks and other merchandise, so that these officers would have the
means of ascertaining the cost or value of the materials composing such
merchandise, together with the expense of manufacturing, preparing, and
putting up such merchandise for shipment. . . . The law (section 2902,
Revised Statutes) makes it your duty to ascertain, estimate, and appraise
the true and actual market value and wholesale price of the merchandise
at the time of exportation, and in the principal markets of the country
whence the same has been imported into the United States, and when it
appears that such true and actual market value cannot be ascertained to
your satisfaction, you are to ascertain the cost of production, pursuant to
the ninth section of the act of 1883, referred to, and in no case to appraise
the goods at less than the cost so ascertained. These statutes are plain,
and the appraising officers must comply with and enforce them."

In the course of the trial, the plaintiffs proposed to show by Mr. M'Creery that, at the time he acted as merchant appraiser in the present case, he acted as such at the same time in other cases. This testimony being objected to by the defendant as irrelevant, it was excluded, and the plaintiffs excepted. The court, however, admitted in evidence the fact that some other appraisals were going on at the same time with the one in the present case, although it excluded, under the exception of the plaintiffs, testimony as to how many of them there were.

The plaintiffs also, for the purpose of raising the point that the merchant appraiser should have been selected by virtue of the classification of employés in the classified customs service, as certified to by the Secretary of the Treasury under section 882 of the Revised Statutes, being the classification provided for by section 6 of the act of January 16, 1883, c. 27, (22 Stat. 405,) offered such classification in evidence, but it was excluded by the court under the objection of the defendant, as incompetent, immaterial and irrelevant, and the plaintiffs excepted.

They also offered to show that the merchant appraiser was not appointed under the civil service rules under the said act of 1883, but the court excluded the evidence and the plaintiffs excepted.

They also offered in evidence sundry depositions of witnesses taken before the reappraisers in this case, in regard to market value; but they were excluded by the court on the objection of the defendant, and the plaintiffs excepted.

They also offered to show by a witness the true and actual market value and wholesale price of the goods in question, and of goods identical with them, in the principal markets of the country from which they were exported, at the time of their exportation, in March, 1886; but, on the objection of the defendant that the testimony was immaterial, incompetent and irrelevant, it was excluded, and the plaintiffs excepted.

The court directed a verdict for the plaintiffs for the $10 merchant appraiser's fees. The defendant asked for a direction for a verdict for him except as to such $10. The plaintiffs requested the court to submit to the jury, for their finding,

the question whether or not there was any lawful appraisement or réappraisement in the case. The court refused so to do, but directed a verdict for the defendant except as to the $10, to which action of the court the plaintiffs excepted.

The plaintiffs then asked the court to direct a verdict for the plaintiffs for the sum claimed beyond the $10, on the ground that the statute under which the merchant appraiser was appointed was unconstitutional and void, under that provision of article 2, section 2, of the Constitution of the United States, which reads as follows: "The Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments," claiming that the merchant appraiser was an inferior officer, within the meaning of that provision, and was not appointed in accordance therewith. The court denied the motion, and the plaintiffs excepted.

They then requested the court to submit all of the testimony to the jury, with proper instructions as to what constituted an appraisement or a reappraisement, which request was refused, and the plaintiffs excepted.

They also requested the court to submit all of the evidence to the jury touching the value upon which the duty was assessed, and the value declared on entry, on the ground that section 2930 of the Revised Statutes was unconstitutional; that the plaintiffs had the right to have submitted to the jury, under proper instructions, on the evidence, all questions touching the imposition of duty; and that, by withholding the evidence from the jury, by virtue of an unconstitutional statute which declared the conclusions of the reappraisers to be final, the plaintiffs were deprived of their constitutional right to a trial by jury, in a case where, by the common law, it obtained, under article 7 of the Amendments of the Constitution. This request was denied and the plaintiffs excepted.

It is provided, by section 2902 of the Revised Statutes, that it shall be the duty of the appraisers of the United States "and every person who shall act as such appraiser," "by all reasonable ways and means in his or their power, to ascertain, estimate, and appraise the true and actual market value and

wholesale price " of the merchandise under appraisal, " at the time of exportation, and in the principal markets of the country whence the same has been imported into the United States ; " and by section 2930 it is made the duty of the general appraiser and the merchant appraiser to examine and appraise the goods " agreeably to the foregoing provisions."

While the general appraiser, Mr. Brower, who acted with the merchant appraiser in the present case, was under examination as a witness on the trial, he was asked whether he proceeded on the appraisement in accordance with the instructions of the Secretary of the Treasury of June 9, 1885, and prior thereto, in respect to. the method of procedure. This question was objected to by the defendant as incompetent, irrelevant, and immaterial, the court sustained the objection, and the plaintiffs excepted. The exclusion of this evidence is assigned for error. The question was too general, and was incompetent in that respect, because it called upon the witness to institute a comparison between the method pursued and the entire instructions of the Secretary of the Treasury, whereas the proper course was for the witness to give the particulars of the method pursued, leaving it to the court and the jury to make the comparison with the instructions which were in evidence. But, inasmuch as the court directed a verdict for the defendant, the plaintiffs properly raise the question as to whether what was done by the appraisers, as shown by the evidence, shows that the reappraisers proceeded " by all reasonable ways and means " to ascertain the value of the goods. In other words, the instructions of the Treasury Department being in evidence, and it being presumed that they were followed, the question is raised, whether those instructions give the importer all the rights to which he is entitled, and whether they are, or are not, repugnant to the provision of the statute which requires the use of " all reasonable ways and means," and whether the proper rights of the importers were accorded to them in this case. The views of the Circuit Court in regard to this case, as stated at the trial, are set forth in the report of it in 30 Fed. Rep. 360, and are contained also in the record. Mr. Robinson, the agent of the

plaintiffs, employed to attend to their custom-house business, and who acted in the present case, gave his testimony as to what took place in regard to the reappraisement, so far as he was cognizant of it. The court commented on his testimony and that of other witnesses, and said: "I do not gather from the testimony, as given here, that the plaintiffs or their agent understood that they were in any way excluded from their goods, which were in the adjoining room. I understand him to say that when his appraisal was going on he was at perfect liberty to be in the room where the goods were, and point them out to the appraisers, but not to the witnesses. I understand him that there was a notice on the door that led into that room that nobody would be allowed in there when the witnesses were examining the goods. When this case was up and the merchant appraiser and the general appraiser were there, if he had wanted to, he could have gone into the room and pointed out any of the goods he had a mind to. He was asked to make his statement and understood that he had the right. He didn't question but that the samples they had were the right ones. He stayed there as long as he wanted to, to do anything about pointing out his goods. I think the importer was entitled to that — to be there when the appraisal was made; to point out his goods; to know they were his goods; to illustrate them and exhibit them in any manner he saw fit; and to present to the appraisers any views he had. I think he had that right; but I am not able to say from this evidence that there was anything tending to show that he was denied that right  There is one other point upon which I am not clear; that is, when this board takes testimony, (and, whether they will take it at all or not, they are to decide themselves,) whether they are bound to let the importer know that they are taking it; or, if they do let the importer know they have taken it, whether they are bound to let him know what it is, so he may answer it. But my impression is that that is discretionary with the board; that they may make inquiry by what they deem to be proper ways and means; and that the importer must rely on their fairness and judgment as to what testimony they do take and the weight they give to it; that

the fact that the importer was not informed who the witnesses were, and what they testified to, and given an opportunity to cross-examine them, and an opportunity to meet it, does not constitute a valid objection against the reappraisement."

The contention of the plaintiffs is that, under the instructions of the Treasury Department and the evidence, the question in issue as to the dutiable value of the merchandise could not be reasonably heard at all, on the reappraisement, because (1) the importer or his agent was practically excluded from the reappraisement; (2) was not afforded opportunity to support his oath on entry, or within proper limits to confront the opposing witnesses by testimony in his own behalf; (3) or to sift evidence secretly or openly heard in opposition to him; (4) or to have the aid of counsel, if he desired; and particularly, that the rule of "reasonable ways and means" could not exist in a tribunal which proceeded to examine an issuable matter under a rule which excluded lawyers.

We are of opinion that, under the statute, the question of the dutiable value of the merchandise is not to be tried before the appraisers as if it were an issue in a suit in a judicial tribunal. Such is not the intention of the statute, and the practice has been to the contrary from the earliest history of the government. No government could collect its revenues or perform its necessary functions, if the system contended for by the plaintiffs were to prevail. The regulations prescribed in the instructions from the Treasury Department are reasonable and proper. By section 2949 of the Revised Statutes, the Secretary of the Treasury has power to establish "rules and regulations, not inconsistent with the laws of the United States, to secure a just, faithful, and impartial appraisement of all merchandise imported into the United States;" and by section 2652 it is made "the duty of all officers of the customs to execute and carry into effect all instructions of the Secretary of the Treasury relative to the execution of the revenue laws; and in case any difficulty shall arise as to the true construction or meaning of any part of the revenue laws, the decision of the Secretary of the Treasury" is made conclusive and binding.

The proceedings for appraisal must necessarily be to some extent of a summary character. In *Cheatham* v. *United States*, 92 U. S. 85, 88, it was said by this court, speaking by Mr. Justice Miller: " All governments, in all times, have found it necessary to adopt stringent measures for the collection of taxes and to be rigid in the enforcement of them. These measures are not judicial; nor does the government resort, except in extraordinary cases, to the courts for that purpose. The revenue measures of every civilized government constitute a system which provides for its enforcement by officers commissioned for that purpose. In this country, this system for each State, or for the Federal government, provides safeguards of its own against mistake, injustice, or oppression, in the administration of its revenue laws. Such appeals are allowed to specified tribunals as the law-makers deem expedient. Such remedies, also, for recovering back taxes illegally exacted, as may seem wise, are provided. In these respects the United States have, as was said by this court in *Nichols* v. *United States*, 7 Wall. 122, enacted a system of corrective justice, as well as a system of taxation, in both its customs and internal-revenue branches. That system is intended to be complete. In the customs department it permits appeals from appraisers to other appraisers, and in proper cases to the Secretary of the Treasury; and, if dissatisfied with this highest decision of the executive department of the government, the law permits the party, on paying the money required, with a protest embodying the grounds of his objection to the tax, to sue the government through its collector, and test in the courts the validity of the tax." It was said also in that case (p. 89) that the government "has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues." One of those conditions is and always has been, that the determination of appraisers as to the dutiable value of goods shall be conclusive and not reëxaminable in a suit at law, provided the appraisers are selected in conformity with the statute, and, in appraising, act within the scope of the powers conferred upon them. See, also, *State Railroad Tax Cases*, 92 U. S. 575, 613; *Snyder* v.

*Marks,* 109 U. S. 189, 193, 194; *Hilton* v. *Merritt,* 110 U. S. 97; *Arnson* v. *Murphy,* 115 U. S. 579, 585, 586: *Oelbermann* v. *Merritt,* 123 U. S. 356, 361.

In *Hilton* v. *Merritt,* it was distinctly held that the valuation of merchandise made by the appraisers was, in the absence of fraud, conclusive on the importer; that the right of appeal to the Secretary of the Treasury, when duties were alleged to have been illegally or erroneously exacted, and the right to a trial by jury in case of an adverse decision by the Secretary of the Treasury, did not relate to alleged errors in the appraisement of goods, whether by a merchant appraiser or otherwise; and that it was not allowable, in a suit to recover back duties, for the plaintiff to put in evidence the records of the proceedings before the merchant appraiser and the general appraiser, including the testimony and the various documents before the appraisers, or to try before the jury the question as to the actual value of the goods, and whether the appraisers followed the evidence before them or disregarded it. The evidence ruled out in that case was evidence which tended only to show carelessness and irregularity in the discharge of their duties by the appraisers, but not that they had assumed powers not conferred by the statute.

Although by section 29 of the act of June 10, 1890, c. 407, entitled "An act to simplify the laws in relation to the collection of the revenues," sections 2902 and 2930 of the Revised Statutes are expressly repealed, section 10 of that act provides that it shall be the duty of the appraisers of the United States, "by all reasonable ways and means," to appraise the actual market value and wholesale price of imported goods in the principal markets of the country whence the same have been imported; and section 13 of that act provides that the decision of the appraiser, or that of the general appraiser in cases of reappraisement, or that of the board of general appraisers on review, shall be final and conclusive as to the dutiable value of the merchandise, against all parties interested therein.

There is nothing in the instructions of the Secretary of the Treasury, or in any of the regulations prescribed, or in the evidence in this case, which shows that the appraisers were

not free to perform their duties properly, as required by the statute. The reappraisers appraised the goods in the appraisers' room in the public store. On the day before the reappraisement took place, the agent of the plaintiffs received due notice of it, and he attended and was called by the reappraisers before them. The merchant appraiser had then and there samples of the plaintiffs' goods, and the general appraiser asked the agent for his statement in the case, and it was made. The samples were on the table before the merchant appraiser, and the cases of goods were in the adjoining room. The agent made no objection as to the proceedings, and testifies that he was allowed to make a full statement concerning the value of the plaintiffs' goods; and the evidence fails to show that any request was made on behalf of the plaintiffs which was refused, except the request to find the value which the plaintiffs desired to be found.

It is contended for the plaintiffs that the merchant appraiser is an officer, and an inferior officer, who, under article 2, section 2, of the Constitution, could be appointed only by the President, or by a court of law, or by the head of a department. In the present case, the selection of the merchant appraiser, his oath, and the manner in which he and the general appraiser discharged their duties, were in compliance with the statute and with the Treasury regulations; but it is urged that the manner of appointing the merchant appraiser was illegal. The merchant appraiser is an expert, selected as an emergency arises, upon the request of the importer for a reappraisal. His appointment is not one to be classified under the civil service law, he is not to be appointed on a competitive examination, nor does he fall within the provisions of the civil service law. He is not a "clerk," nor an "agent," nor a "person employed," in the customs department, within the meaning of section 6 of the civil service act; nor is he an officer of the United States, required to be appointed by the President, or a court of law, or the head of a department. He is an expert, selected as such. Section 2930 requires that he shall be a "discreet and experienced merchant," "familiar with the character and value of the goods in question." He is selected for the special

case. He has no general functions, nor any employment which has any duration as to time, or which extends over any case further than as he is selected to act in that particular case. He is an executive agent, as an expert assistant to aid in ascertaining the value of the goods, selected for the particular case on the request of the importer, and selected for his special knowledge in regard to the character and value of the particular goods in question. He has no claim or right to be designated, or to act except as he may be designated. The statute does not use the word "appoint," but uses the word "select." His position is without tenure, duration, continuing emolument, or continuous duties, and he acts only occasionally and temporarily. Therefore, he is not an "officer," within the meaning of the clause of the Constitution referred to. *United States* v. *Maurice*, 2 Brockenbrough, 96, 102, 103; *United States* v. *Hartwell*, 6 Wall. 385, 393; *United States* v. *Germaine*, 99 U. S. 508, 510, 511; *Hall* v. *Wisconsin*, 103 U. S. 5, 8, 9; *United States* v. *Mouat*, 124 U. S. 303, 307; *United States* v. *Smith*, 124 U. S. 525, 532.

The present question is very much like that considered in *United States* v. *Germaine*. In that case, under section 4777 of the Revised Statutes, the Commissioner of Pensions was empowered to appoint civil surgeons to make a periodical examination of pensioners and to examine applicants for pensions. The question arose whether a surgeon so appointed was an officer of the United States, whose appointment was required to be made by the President, or a court of law, or the head of a department. This court held that he was not, and said, referring to the case of *United States* v. *Hartwell*: "If we look to the nature of defendant's employment, we think it equally clear that he is not an officer. In that case the court said, the term embraces the ideas of tenure, duration, emolument, and duties, and that the latter were continuing and permanent, not occasional or temporary. In the case before us the duties are *not* continuing and permanent, and they *are* occasional and intermittent. The surgeon is only to act when called on by the Commissioner of Pensions in some special case, as when some pensioner, or claimant of a pension, pre-

sents himself for examination. He may make fifty of these examinations in a year, or none. He is required to keep no place of business for the public use. He gives no bond and takes no oath, unless by some order of the Commissioner of Pensions of which we are not advised. No regular appropriation is made to pay his compensation, which is two dollars for every certificate of examination, but it is paid out of money appropriated for paying pensions in his district, under regulations to be prescribed by the Commissioner. He is but an agent of the Commissioner, appointed by him, and removable by him at his pleasure, to procure information needed to aid in the performance of his own official duties. He may appoint one or a dozen persons to do the same thing. The compensation may amount to five dollars or five hundred dollars per annum. There is no penalty for his absence from duty or refusal to perform, except his loss of the fee in the given case. If Congress had passed a law requiring the Commissioner to appoint a man to furnish each agency with fuel at a price per ton fixed by law high enough to secure the delivery of the coal, he would have as much claim to be an officer of the United States as the surgeons appointed under this statute."

This case does not present any question like that of substituting a new merchant appraiser for one already selected, as in *Greely* v. *Thompson*, 10 How. 225; nor is it a case where the appraiser did not see the original packages, as in *Greely's Administrator* v. *Burgess*, 18 How. 413; nor a case where it was offered to show that the merchant appraiser was not a person having the qualification prescribed by the statute, as in *Oelbermann* v. *Merritt*, 123 U. S. 356, and in *Mustin* v. *Cadwalader*, 123 U. S. 369; nor a case where it was contended that the appraisers did not open, examine and appraise the packages designated by the collector, as in *Oelbermann* v. *Merritt;* nor a case where to the admitted market value of an importation there was added such additional value as was equal to a reduction made in the valuation of the cases containing the goods, as in *Badger* v. *Cusimano*, 130 U. S. 39. Those were instances of errors outside of the valuation itself and outside of the appraisement prescribed by the statute.

Nor is there anything in the objection that section 2930 of the Revised Statutes is unconstitutional in making the decision of the appraisers final, and that the plaintiffs had a right to have the question of the dutiable value of the goods passed upon by a jury. As said before, the government has the right to prescribe the conditions attending the importation of goods, upon which it will permit the collector to be sued. One of those conditions is that the appraisal shall be regarded as final; and it has been held by this court, in *Arnson* v. *Murphy*, 109 U. S. 238, that the right to bring such a suit is exclusively statutory, and is substituted for any and every common law right. The action is, to all intent and purposes, with the provisions for refunding the money if the importer is successful in the suit, an action against the government for moneys in the Treasury. The provision as to the finality of the appraisement is virtually a rule of evidence to be observed in the trial of the suit .brought against the collector.

The uniform course of legislation and practice in regard both to the mode of selection of the merchant appraiser and as to the conclusive effect of the appraisal, are entitled to great weight. *Stuart* v. *Laird*, 1 Cranch, 299, 309; *Martin* v. *Hunter's Lessee*, 1 Wheat. 304, 352; *Cohens* v. *Virginia*, 6 Wheat. 264, 418, 421; *Cooley* v. *Board of Wardens*, 12 How. 299, 315; *Lithographic Co.* v. *Sarony*, 111 U. S. 53, 57; *The Laura*, 114 U. S. 411, 416.

The plaintiffs complain of the exclusion, as evidence, of a paper, Exhibit No. 14, being a report received by the collector at New York from the United States consul at Horgen, in Switzerland, dated February 25, 1886, and purporting to be a memorandum made by one Schmid, a government silk expert, concerning certain undervaluations of merchandise covered by invoices of goods to C. A. Auffmordt & Co., which embraced the goods in question. The paper was excluded by the court on the objection of the defendant that it was immaterial and irrelevant, and the plaintiffs excepted. It does not appear that the paper was used upon either of the appraisals, and, if it had been, it would have been proper to use it, as advising the officers of the government of the cost of the goods in question. It was properly excluded.

The other questions discussed at the bar have been fully considered, but it is not considered necessary to comment on them.                                   *Judgment affirmed.*