UNITED STATES of America, ex rel.
Allen LAMERS, Plaintiff,

v.

CITY OF GREEN BAY, WISCONSIN,
Defendant.

No. 95–C–684.

United States District Court,
E.D. Wisconsin.

April 29, 1996.

Robert Parent, Roels, Keidatz & Parent, De Pere, WI, for Lamers.

Benjamin J. Vernia, U.S. Dept. of Justice, Washington, DC; Thomas P. Schneider, U.S. Atty. Milwaukee, WI, for United States.

Jerry H. Hanson, Assistant City Attorney, Green Bay, WI; Edward J. Gill, Eckert, Seamans, Cherin & Mellott, Washington, DC, for defendant.

### OPINION AND ORDER

CURRAN, District Judge.

Relator Allen Lamers commenced this qui tam action pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq. to recover an amount equal to three times the damages allegedly sustained by the United States as a result of fraud allegedly committed by the

City of Green Bay with respect to its receipt of funds from the Federal Transit Administration for the purpose of providing school bus service. On October 20, 1995, the United States elected to decline intervention pursuant to 31 U.S.C. § 3730(b)(4)(B). The Defendant was then served and issue has been joined.

On February 20, 1996, the United States moved to quash a subpoena served on the Regional Counsel for the Federal Transit Administration (FTA) of the Department of Transportation (DOT), Dorval Carter, by the relator. The United States further moved for a protective order limiting the relator and the Defendant to the use of joint interrogatories to obtain evidence from Mr. Carter and precluding the parties from seeking expert testimony from him. Regional Counsel Carter was responsible for investigating the allegations in the administrative complaint filed by Lamers Bus Line on July 15, 1994. The relator in this action, Allen Lamers, is an officer of Lamers Bus Line. Counsel for the relator initially contacted the chief counsel of the FTA advising that the relator expected to call Dorval Carter to testify as a witness both at a pretrial deposition and at trial. He requested that the chief counsel arrange for Mr. Carter to be made available for this testimony and further requested the cooperation of the Regional Office with regard to any additional testimony and documents that the relator might need in connection with the case. Counsel cited 49 C.F.R. § 9.7, which addresses testimony by DOT employees in legal proceedings in which the United States is a party, as authority for these requests. Chief Counsel Berle M. Schiller responded stating that since Mr. Carter had been involved extensively in the investigation of the administrative complaint, it would be inappropriate for him to provide testimony in this litigation. He concluded that, if the administrative complaint was withdrawn, Chief Counsel Schiller would consider the request under 49 C.F.R. Part 9, the U.S. Department of Transportation regulation governing testimony requests from private litigants. Counsel for the relator renewed his request by letter dated December 7, 1995, explaining that the agency rendered a final determina-

tion on the complaint that dealt with the allegations in the False Claims Act suit and that "ongoing grant oversight activity by FTA is not part of the administrative proceeding, now resolved, to which Lamers was a party." Chief Counsel Schiller responded, stating that the Department would now consider the complaint withdrawn in the administrative complaint but that because the request did not comply with 49 C.F.R. Part 9, he was unable to consider whether the information sought should be disclosed. By letter dated December 22, 1995, the relator's attorney stated his position that in a qui tam false claims action the United States is not merely a nominal party but is the real party in interest and thus the request for the testimony of Mr. Carter was properly made under 49 C.F.R., Section 9.7. The request was reiterated with respect to making Mr. Carter available for a deposition and counsel further requested production of three separate sets of documents. Counsel concluded that if the FTA was unwilling to comply on a cooperative basis, the relator would "proceed to utilize compulsory process." On January 17, 1996, the relator served a deposition subpoena on Mr. Carter. After a second volley of letters, the United States moved to quash the subpoena. It should be noted that the issue before the court only involves the subpoena with respect to Mr. Carter's testimony and the relator's attempt to elicit expert testimony from Mr. Carter. The DOT has elected to treat the subpoena duces tecum as a Freedom of Information Act request and, pursuant to DOT regulations, is fulfilling that request. *See* 49 C.F.R. § 9.13.

■  In the seminal case of *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), the Supreme Court held that subordinate federal officials could not be held in contempt for failing to comply with a court order that would have caused them to violate a valid federal regulation. *Id.* at 467–68, 71 S.Ct. at 418–19. A federal employee thus cannot be compelled to obey a subpoena, "even a federal subpoena," that acts against valid agency regulations. *Edwards v. United States Department of Justice,* 43 F.3d 312, 317 (7th Cir.1994). The DOT has regulations governing the testimo-

ny of employees in legal proceedings in which the United States is a party and also in legal proceedings between private litigants which concern information acquired in the course of an employee performing official duties. The purposes of these regulations are to "conserve the time of the employees for conducting official business; ... [to minimize the possibility of involving the department in controversial issues not related to its mission; ...] to [maintain the impartiality of the department among private litigants ...] to [avoid spending the time and money of the United States for private purposes]; and ... to protect confidential, sensitive information and the deliberative process of the department." 49 C.F.R. § 9.1(b).

■ In this case the relator does not maintain that he complied with the applicable regulations but rather argues that, because the United States is the real party in interest, he need not comply with the regulations concerning legal proceedings between private litigants. Qui tam actions have existed in various forms since 1863 and provide cash bounties to private citizens who successfully bring suit against those who defraud the federal government. *United States ex rel. Springfield Terminal Railway Company v. Quinn*, 14 F.3d 645, 649 (D.C.Cir.1994). The statutes are remedial and "intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side and should be construed accordingly. [The qui tam statutes were] passed upon the theory, based on experience as old as modern civilization, that one of the least expensive and most effective means of preventing frauds on the Treasury is to make the perpetrators of them liable to actions by private persons acting, if you please, under the strong stimulus of personal ill will or the hope of gain. Prosecutions conducted by such means compare with the ordinary methods as the enterprising privateer does to the slow-going public vessel." *United States v. Griswold*, 11 Sawy. 65, 24 F. 361 (D.C.Or. 1885).

■ In this case, however, the relator has clearly confused the distinction between the United States being a party and the United States being the real party in inter-

est. In cases in which the government declines to intervene, the False Claims Act "effectively assigns the government's claim to qui tam plaintiffs such as [Lamers] who then may sue based upon an injury to the federal treasury." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994). Although the qui tam plaintiff is relieved of the burden of establishing standing, it does not follow that because the relator is suing in the name of the United States that his counsel represents the United States in this action. *Id.* at 760. Although a relator may sue in the government's name, the relator is not vested with governmental power. "[T]he relator's 'position is without tenure, duration, continuing emolument, or continuous duties.'" *United States, ex rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032, 1041 (6th Cir.1994) quoting *Auffmordt v. Hedden,* 137 U.S. 310, 327, 11 S.Ct. 103, 108, 34 L.Ed. 674 (1890). The False Claims Act empowers the qui tam relator to act as a private prosecutor but does not empower it to replace the government. *United States by Department of Defense v. Caci International Inc.,* —— F.Supp. ——, 1995 WL 404857 (S.D.N.Y. 1995) citing *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1155 (2nd Cir.), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993).

The court accordingly finds that the relator must comply with the DOT regulations concerning legal proceedings between private litigants. IT IS ORDERED that the government's motion to quash the subpoena and for a protective order be and hereby ARE GRANTED.

Done and Ordered.