# CONSTITUTIONALITY OF THE RONALD REAGAN CENTENNIAL COMMISSION ACT OF 2009

*Provisions in the Ronald Reagan Centennial Commission Act of 2009 establishing that six of eleven commissioners of the Ronald Reagan Centennial Commission would be members of Congress, appointed by congressional leadership, would raise concerns under the Appointments Clause, the Ineligibility Clause, and the separation of powers.*

April 21, 2009

## MEMORANDUM OPINION FOR THE ACTING ASSISTANT ATTORNEY GENERAL FOR THE OFFICE OF LEGISLATIVE AFFAIRS

The Ronald Reagan Centennial Commission Act of 2009 (H.R. 131, or the "Act") would create a Ronald Reagan Centennial Commission with responsibility to "plan, develop, and carry out such activities as the Commission considers fitting and proper to honor Ronald Reagan on the occasion of the 100th anniversary of his birth." *Id.* § 3(1). Six of the eleven commissioners would be members of Congress, appointed by congressional leadership (*id.* § 4(a)), raising concerns under the Appointments Clause, the Ineligibility Clause, and the separation of powers. To ameliorate these concerns, we recommend amending subsection 3(1) of the bill to make clear that the Commission would be responsible for making advice and recommendations as to the planning, developing, and carrying out of the contemplated commemorative activities. We further recommend designating an Executive Branch official as the officer responsible for considering the advice and recommendations of the Commission and then "planning, developing and carrying out" the ceremonial events. The Act could require that these events include participatory roles for members of both branches, but operational control should remain with the designated Executive Branch official.

## I.

The Ronald Reagan Centennial Commission (the "Commission") created by the Act would be composed of the following eleven members:

(1) The Secretary of the Interior.

(2) Four members appointed by the President after considering the recommendations of the Board of Trustees of the Ronald Reagan Foundation.

(3) Two Members of the House of Representatives appointed by the Speaker of the House of Representatives.

(4) One Member of the House of Representatives appointed by the minority leader of the House of Representatives.

(5) Two Members of the Senate appointed by the majority leader of the Senate.

(6) One Member of the Senate appointed by the minority leader of the Senate.

H.R. 131, § 4(a). Six of the eleven members, therefore, would be members of Congress, appointed by other members of Congress. The Commission would have responsibility to

> (1) plan, develop, and carry out such activities as the Commission considers fitting and proper to honor Ronald Reagan on the occasion of the 100th anniversary of his birth;

> (2) provide advice and assistance to Federal, State, and local governmental agencies, as well as civic groups to carry out activities to honor Ronald Reagan on the occasion of the 100th anniversary of his birth;

> (3) develop activities that may be carried out by the Federal Government to determine whether the activities are fitting and proper to honor Ronald Reagan on the occasion of the 100th anniversary of his birth; and

> (4) submit to the President and Congress reports pursuant to section 7.

*Id.* § 3. To fulfill these responsibilities, the Commission would be empowered to appoint an executive director and hire staff (*id.* § 5(a)-(b)), to "procure temporary and intermittent services" of experts and consultants (*id.* § 5(e)), and to "enter into contracts with and compensate government and private agencies or persons" (*id.* § 6(f)). Positions on the Commission would be uncompensated (*id.* § 4(f)) and would last until the duties of the Commission are complete, "but not later than May 30, 2011" (*id.* § 8(a)).

## II.

Legislation of this nature, creating a commemorative commission composed of representatives of multiple branches, has ample historical precedent.[1] It is not unconstitutional for such commissions to perform advisory functions. Nor is there any constitutional problem with representatives of multiple branches participating in ceremonial events. Congress also possesses the authority to plan, develop and carry out ceremonial activities of its own that are

---

[1] *See, e.g.*, Pub. L. No. 91-332, § 2(a), 84 Stat. 427 (1970) (creating a National Parks Centennial Commission, consisting of four members of the Senate appointed by the President of the Senate; four members of the House appointed by the Speaker of the House; the Secretary of the Interior; and six presidential appointees); Pub. L. No. 98-101, § 4(a), 97 Stat. 719 (1983) (creating a Commission on the Bicentennial of the Constitution, consisting of 20 presidential appointees; the Chief Justice of the United States; the President pro tempore of the Senate; and the Speaker of the House); Pub. L. No. 99-624, § 4(a), 100 Stat. 3497 (1986) (creating a Dwight David Eisenhower Centennial Commission, consisting of the President pro tempore of the Senate; the Speaker of the House; six Senators appointed by the President pro tempore of the Senate; six members of the House appointed by the Speaker; six Presidential appointees; and the Archivist of the United States); Pub. L. No. 105-389, § 4(a), 112 Stat. 3486 (1998) (creating a Centennial of Flight Commission, consisting of the Director of the National Air and Space Museum of the Smithsonian Institution; the Administrator of the National Aeronautics and Space Administration; the chairman of the First Flight Centennial Foundation of North Carolina; the chairman of the 2003 Committee of Ohio; the head of a United States aeronautical society; and the Administrator of the Federal Aviation Administration); Pub. L. No. 106-408, § 303(b)(1), 114 Stat. 1782 (2000) (creating a National Wildlife Refuge System Centennial Commission, consisting of the Director of the United States Fish and Wildlife Service; up to ten persons appointed by the Secretary of the Interior; the chairman and ranking minority member of the Committee on Resources of the House of Representatives and of the Committee on Environment and Public Works of the Senate; and the congressional representatives of the Migratory Bird Conservation Commission).

clearly in aid of the functions of the Legislative Branch.[2] However, when the responsibilities of members of hybrid commissions extend beyond providing advice or recommendations to the Executive Branch, or participating in ceremonial activities, to exercising operational control over a statutorily prescribed national commemoration, then the Executive Branch has consistently raised constitutional objections.[3] Specifically, legislative involvement in the proposed Commission would be constitutionally problematic for several reasons.

First, the Appointments Clause requires that "Officers of the United States" be appointed by the President with the Senate's advice and consent or, in cases of inferior officers, either by that same process or by the President alone, by Courts of Law, or by Heads of Departments. U.S. Const. art. II, § 2, ¶ 2. An Officer of the United States is an appointee to an "office" whose duties constitute the exercise of "significant authority pursuant to the laws of the United States."[4]

For purposes of the Appointments Clause, an "office" "embraces the ideas of tenure, duration, emolument, and duties." *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1867). The commissioners here would not receive compensation for their services (H.R. 131, § 4(f) ("Members shall serve without pay")), and the positions they are to fill would exist for no longer than two years (*id.* § 8(a) ("The Commission may terminate on such date as the Commission may determine after it submits its final report pursuant to section 7(c), but not later than May 30, 2011")). Nevertheless, the duties of the commissioners would not be "occasional and

---

[2] *See, e.g.*, Capitol Visitor Center Act, Pub. L. No. 110-437, § 402(b)(1), 122 Stat. 4983, 4991-92 (Oct. 20, 2008), *to be codified at* 2 U.S.C. § 2242(b)(1) ("In providing for the direction, supervision, and control of the Capitol Guide Service, the Architect of the Capitol, upon recommendation of the Chief Executive Officer, is authorized to . . . subject to the availability of appropriations, establish and revise such number of positions of Guide in the Capitol Guide Service as the Architect of the Capitol considers necessary to carry out effectively the activities of the Capitol Guide Service.").

[3] *Constitutionality of Resolution Establishing United States New York World's Fair Commission*, 39 Op. Att'y Gen. 61, 62 (1937) (Attorney General Cummings) ("In my opinion those provisions of the joint resolution establishing a Commission composed largely of members of the Congress and authorizing them to appoint a United States Commissioner General and two Assistant Commissioners for the New York World's Fair, and also providing for the expenditure of the appropriation made by the resolution and for the administration of the resolution generally amount to an unconstitutional invasion of the province of the Executive"); H.R. Doc. No. 75-252, at 2 (1937) (message of President Roosevelt vetoing joint resolution that would have authorized federal participation in 1939 World's Fair and quoting opinion of Attorney General Cummings above as basis); Statement on Signing the Bill Establishing a Commission on the Bicentennial of the United States Constitution, Sept. 29, 1983, in II *Public Papers of the President: Ronald Reagan* 1390 (1983) ("I welcome the participation of the Chief Justice, the President pro tempore of the Senate, and the Speaker of the House of Representatives in the activities of the Commission [on the Bicentennial of the Constitution]. However, because of the constitutional impediments contained in the doctrine of the separation of powers, I understand that they will be able to participate only in ceremonial or advisory functions of the Commission, and not in matters involving the administration of the Act. Also, in view of the incompatibility clause of the Constitution, any Member of Congress appointed by me pursuant to Section 4(a)(1) of this Act may serve only in a ceremonial or advisory capacity."); *Appointments to the Commission on the Bicentennial of the Constitution*, 8 Op. O.L.C. 200 (1984) ("*Bicentennial Commission*") (proposing practical solution to constitutional concerns raised by presence of members of Congress on Commission on the Bicentennial of the Constitution).

[4] *Buckley v. Valeo*, 424 U.S. 1, 126 (1976); *see also United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1867) ("An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties."); *The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 148 (1996) ("Dellinger Memo") ("An appointee (1) to a position of employment (2) within the federal government (3) that carries significant authority pursuant to the laws of the United States is required to be an 'Officer of the United States.'").

intermittent."[5]  They would be continuing during the period of time necessary for the exercise of the important government duties assigned to the Commission.  In *Morrison v. Olson*, 487 U.S. 654 (1987), the Supreme Court held that it was "clear" that an "independent counsel" under the Ethics in Government Act of 1978, 28 U.S.C. §§ 591-599 (1982 & Supp V)—a position that was temporary and case-specific, but expected to last for an extended period, with ongoing, continuous duties, and termination only upon a determination that all matters within the counsel's jurisdiction were substantially complete—"is an 'officer' of the United States, not an 'employee.'"  *Id.* at 671 n.12.  Consistent with this holding, our Office has concluded that members of an unpaid commission similar to the Reagan Commission would hold offices in the constitutional sense.[6]  Moreover, the Commissioners would exercise significant governmental authority.  Although some of the functions of the Commission here would be merely advisory (H.R. 131, § 3(2), (3), (4)), the Commission would also have the authority to "plan, develop, and carry out such activities as the Commission considers fitting and proper to honor Ronald Reagan" (*id.* § 3(1)).  This Office has previously indicated that "carrying out a limited number of commemorative events and projects" is a "clearly executive" function and that the planning and development of commemorative events constitutes "significant authority" for Appointments Clause purposes if the plans are final (i.e., not just advisory).[7]  In light of these precedents, we conclude the Commissioners would be Officers of the United States.  Therefore the bill's prescription that members of Congress shall appoint certain of the Commissioners would violate the Appointments Clause.

An additional constitutional problem arises from the fact that six of the Commissioners would not only be appointed by members of Congress but would themselves be members of Congress.  The Ineligibility Clause states that "[n]o Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been

---

[5] *See United States v. Germaine*, 99 U.S. 508, 511-12 (1879) ("If we look to the nature of [the civil surgeon's] employment, we think it equally clear that he is *not* an officer. . . .  [T]he duties are not continuing and permanent, and they *are* occasional and intermittent.") (emphasis in original); *see also Auffmordt v. Hedden*, 137 U.S. 310, 326-27 (1890) ("[The merchant appraiser] has no general functions, nor any employment which has any duration as to time, or which extends over any case further than as he is selected to act in that particular case. . . . His position is without tenure, duration, continuing emolument, or continuous duties . . . .  Therefore, he is not an "officer," within the meaning of the clause.").

[6] *See, e.g.*, Memorandum for L. Anthony Sutin, Acting Assistant Attorney General, Office of Legislative Affairs, from William Michael Treanor, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Centennial of Flight Commission—Airport Improvement Program Reauthorization, H.R. 4057*, at 1 (Oct. 1, 1998) ("*Centennial of Flight Commission*") (objecting on Appointments Clause grounds to H.R. 4057); *see also* H.R. 4057, 105th Cong. § 804(c)(1) (engrossed amendment as agreed to by Senate, Sept. 25, 1998) (providing that "members of the Commission shall serve without pay or compensation"). *Cf. Offices of Trust*, 15 Op. Att'y Gen. 187, 188 (1877) (concluding, for purposes of the Emoluments Clause and with respect to commissioners of the United States Centennial Commission, that "though their duties are of a special and temporary character, they may properly be called officers of the United States during the continuance of their official functions"); *In re Corliss*, 11 R.I. 639 (1877) (holding that member of same Centennial Commission held "Office of Trust or Profit" under U.S. Const., art. II, § 1, and was therefore disqualified from serving as a presidential elector).

[7] *Bicentennial Commission*, 8 Op. O.L.C. at 200; *Centennial of Flight Commission* at 1 ("The Commission is also authorized . . . to plan and develop commemorative activities itself . . . .  In accordance with prior precedent of this Office, these functions have been understood to encompass significant authority for purposes of the Appointments Clause.").

increased during such time." U.S. Const. art. I, § 6, cl. 2. As we have previously advised, "[t]he most common problem under the Ineligibility Clause arises from legislation that creates a commission or other entity and simultaneously requires that certain of its members be Representatives or Senators, either *ex officio* or by selection or nomination by the congressional leadership. Unless the congressional members participate only in advisory or ceremonial roles, or the commission itself is advisory or ceremonial, the appointment of members of Congress to the commission would violate the Ineligibility Clause." Dellinger Memo, 20 Op. O.L.C. at 160. Here, the legislation contemplates that Commissioners would not simply be participating in or advising on ceremonial events but that they would also be responsible for planning, developing, and carrying out such events as part of a national commemoration. In such circumstances, the Commission's composition would run afoul of the Ineligibility Clause.

Finally, independent of the concerns under the Appointments and Ineligibility Clauses, the Commission's composition would raise constitutional concerns under the anti-aggrandizement principle. "[O]nce Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectly—by passing new legislation." *Bowsher v. Synar*, 478 U.S. 714, 733-34 (1986); *see also INS v. Chadha*, 462 U.S. 919 (1983). A statute may not give members of Congress, or congressional agents, the authority to perform Executive Branch functions. Accordingly, "designating a member of Congress to serve on a commission with any executive functions, even in what was expressly labeled a ceremonial or advisory role, may render the delegation of significant governmental authority to the commission unconstitutional as a violation of the anti-aggrandizement principle." Dellinger Memo, 20 Op. O.L.C. at 160 n.95 (citing *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993) (invalidating statute that authorized agents of Congress to be members of the Federal Election Commission)). This problem would persist, moreover, even if only a minority of Commissioners were members or agents of Congress, and even if the congressional members were not permitted to exercise voting authority. *See NRA Political Victory Fund*, 6 F.3d at 826-27 (members of Congress could not serve on the FEC even in non-voting capacity).[8]

To address these constitutional concerns, the functions of the Commission in subsection 3(1) should be limited to giving advice and making recommendations with respect to planning, developing and carrying out commemorative activities. In such an advisory capacity, the Commission could remain composed as it is under section 4(a) of the Act. The Act should then assign an Executive Branch official the responsibility to consider the advice of the Commission and then to "plan, develop and carry out such activities as [the official] considers fitting and proper to honor Ronald Reagan on the occasion of the 100th anniversary of his birth." The Act could still require that any ceremonial events include a role for members of Congress. As long as operational control remains with the Executive Branch official, the Appointments Clause and

---

[8] *See also* Memorandum for Robert Raben, Assistant Attorney General, Office of Legislative Affairs, from Evan Caminker, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: National Wildlife Refuge System Centennial Commemoration Act of 2000* (Aug. 11, 2000) (objecting on anti-aggrandizement grounds to statute appointing members of Congress to serve as non-voting members of commission with responsibility to develop and carry out plan to commemorate 100th anniversary of National Wildlife Refuge System).

Ineligibility Clause concerns would be assuaged, and there would be no impermissible congressional aggrandizement.

/s/

MARTIN S. LEDERMAN
Deputy Assistant Attorney General