**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Terry Lynn NICHOLS, Defendant–**
**Appellant.**

**No. 98–1231.**

United States Court of Appeals,
Tenth Circuit.

July 12, 1999.

Before PORFILIO, BALDOCK, and BRORBY, Circuit Judges.

## ORDER

This matter is before the court on counsel's application for attorney's fees and expenses. In a separate sealed order issued today, we have outlined the fees and expenses which will be paid to counsel for their representation of defendant Terry Lynn Nichols in this matter. Through this order, we will provide our reasoning for the conclusions we have drawn. It is our intent to provide guidance to both counsel and the court for future appeals invoking the mandate of 21 U.S.C. § 848(q).

Defendant Terry Lynn Nichols was tried as a co-conspirator in the bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma. *See United States v. Nichols,* 169 F.3d 1255, 1260 (10th Cir.1999), *petition for cert. filed,* (U.S. June 30, 1999)(No. 99–5063)(providing factual background). Throughout the proceedings, Mr. Nichols has had the benefit of appointed counsel. In orders dated July 10 and July 22, 1998, respectively, we appointed three lawyers to represent him. Although the orders did not make specific reference to our appointing authority, the fair inference is that counsel were appointed pursuant to 21 U.S.C. § 848(q)(10).

Unlike appointments made in most direct criminal appeals under the Criminal Justice Act, § 848(q) speaks specifically to the availability of counsel for indigent defendants in capital litigation. The current version of the statute provides:

> (4)(A) Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either—
>
> (i) before judgment; or
>
> (ii) after the entry of a judgment imposing a sentence of death but before the execution of that judgment; shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

21 U.S.C. § 848(q)(4)(A). Here, the government sought the death penalty from the outset. Consequently, counsel were appointed pursuant to this provision. We continued those appointments on appeal. *See* Volume VII, *Guide To Judiciary Policies and Procedures,* Ch. VI, section 6.02B(2)(noting that courts may consider continuation of multiple counsel and higher rates under this provision even where the matter is no longer a capital case). The particular issue before us, then, is the appropriate analysis for payment of fees under § 848(q).

■ Prior to April of 1996, our task in analyzing fees under the statute was directed in large part by the language of § 848(q)(10). At that time, that paragraph stated:

> Notwithstanding the rates and maximum limits generally applicable to criminal cases and any other provision of law to the contrary, the court shall fix the compensation to be paid to attorneys appointed under this subsection and the fees and other expenses to be paid for investigative, expert, and other reasonably necessary services authorized under paragraph (9), at such rates or amounts as the court determines to be *reasonably necessary* to carry out the requirements of paragraphs (4) through (9).

21 U.S.C. § 848(q)(10)(1995)(emphasis added). When Congress passed the Anti–Terrorism and Effective Death Penalty Act, however, the language of paragraph 10 was amended. It now provides:

> Compensation shall be paid to attorneys appointed under this subsection at a rate of not more than $125 per hour for in-court and out-of-court time. Not less than 3 years after April 24, 1996, the Judicial Conference is authorized to raise the maximum for hourly payment specified in the paragraph up to the aggregate of the overall average percentages of the adjustments in the rates of pay for the General Schedule made pursuant to section 5305 of Title 5 on or after such date. After the rates are raised under the preceding sentence, such hourly range may be raised at intervals of not less than one year, up to the aggregate of the overall average percentages of such adjustments made since the last raise under this paragraph.

21 U.S.C. § 848(q)(10)(A). Notably, the amended version does not contain reference to the reasonableness of services performed. Rather, the focus of the new

section is on adjustments to the rates of pay which will be afforded appointed counsel. The legislative history of the statute is silent on the reasons behind the redaction.

Nevertheless, reasonableness must continue to be the standard for evaluating the appropriateness of fees under this statute. To conclude otherwise would require us to reject both Supreme Court precedent and the statutory mandate of the Criminal Justice Act. *See In re Berger*, 498 U.S. 233, 235, 111 S.Ct. 628, 112 L.Ed.2d 710 (1991)(per curiam)(identifying the § 848 inquiry as "what level of compensation is 'reasonably necessary' to ensure that capital defendants receive competent representation...."); *18 U.S.C. § 3006A(d)* (requiring that attorneys be compensated for "time reasonably expended out of court"); *see also United States v. Kennedy*, 64 F.3d 1465, 1470 (10th Cir.1995)(noting that the defendant bears the burden of showing services are "necessary for adequate representation" under the Criminal Justice Act.).

Moreover, although redacted from paragraph 10 of § 848(q), the reasonableness standard may still be gleaned from the language of amended paragraph 9, which states:

> Upon a finding that investigative, expert, or *other services are reasonably necessary* for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10).

21 U.S.C. § 848(q)(9)(emphasis added). Through inclusion of the reasonableness language in this paragraph, Congress made clear its intent to retain judicial discretion as a tool in evaluating the appropriate amount of fees to pay for services rendered in capital cases. It would be anomalous to apply a reasonableness test with regard to investigative services but abandon it with respect to attorney's fees. In addition, the reference in paragraph 9 to paragraph 10 appears deliberate. Paragraph 9 provides that the court may authorize payment of "fees and expenses" under paragraph 10. We may do so, however, only for those services which are reasonably necessary. The logical result is that the reasonableness standard applies to paragraph 10 fees as well.

Our goal in analyzing the meaning of any statute is to "give effect to the will of Congress." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). We have interpreted that mandate to mean that where a statute is clear on its face, we give its words literal effect. *See Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1460 (10th Cir.1997). "When interpreting statutory language, however, appellate courts must examine the ... language in context, not in isolation." *True Oil Co. v. Commissioner*, 170 F.3d 1294, 1299 (10th Cir.1999). We " 'must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *Id.* (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). Our conclusion that § 848(q) incorporates a reasonableness assessment meets these important goals and effectuates the will of Congress in drafting the appointment statutes.

Having determined the appropriate standard, we now turn to the vouchers at hand. Counsel have provided us with accurate and timely billing records. In addition, all three lawyers submitted, upon our request, supplements to their fee applications. The court has high regard for counsel and appreciates not only their efforts to comply with our requests, but also the vigorous and committed advocacy they have provided for their client throughout these proceedings.

Nevertheless, we are faced with a very difficult task. The balance between providing counsel with fair payment and, at the same time, acting as trustees of the

public's funds, is most precarious. We are committed not only to compensating counsel adequately for work that is extremely difficult, but also to acting as guardians of the taxpayers' dollars. To this extent, we are duty bound to undertake a very considered evaluation of the reasonableness of each and every time entry. The undertaking is particularly important in a case such as this, where the fees generated were very large.

The fee amounts approved in the separate order we have entered today are a reflection of our attempt to balance these competing interests. It is an undertaking which is not peculiar to this case or these lawyers. Indeed, we applaud counsel's patience as we have grappled with these issues. We have settled on a standard which will, we hope, benefit the bench and bar in all future matters. The issue presented here will arise again, and we as a court will apply the same standards and undertake the same difficult evaluation. In capital cases, and in all matters arising under the Criminal Justice Act, it is a duty we take very seriously.