Larry B. FRIEDMAN, In the Name of the United States Government

v.

RITE AID CORPORATION.

Civil Action No. 97–7889.

United States District Court,
E.D. Pennsylvania.

June 8, 2001.

Pharmacist brought qui tam action under False Claims Act alleging that pharmacy chain submitted false statements regarding sale of prescription drugs to beneficiaries of federal health care programs. Government did not intervene, and pharmacy chain moved to dismiss amended complaint. The District Court, Bartle, J., held that: (1) suit was not "based upon" public disclosures regarding other pharmacy chains, so as to divest court of subject matter jurisdiction under False Claims Act; (2) False Claims Act does not violate Appointments Clause; (3) False Claims Act does not infringe on defendant's due process rights; and (4) False Claims Act does not violate separation of powers doctrine.

Roberto A. Rivera–Soto, Scott L. Vernick, Fox Rothchild O'Brien Frankle, LLP, Phiadelphia, PA, Ross Befelman, Begelman & Orlow, PC, Cherry Hill, NJ, for plaintiff.

Raymond A. Quaglia, Eric W. Sitarchuk, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for defendant.

*MEMORANDUM*

BARTLE, District Judge.

This is a qui tam action under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* Relator Larry B. Friedman ("Friedman"), a licensed pharmacist, has instituted this suit for himself and for the United States Government against defendant Rite Aid Corporation ("Rite Aid"). Friedman alleges that Rite Aid has committed fraud and submitted false statements to the Government for the sale of prescription drugs to beneficiaries of federal health care programs. Rite Aid has now moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

■■■ The False Claims Act allows a private party, called a relator, under certain circumstances, to bring an action in the name of the Government against anyone who submits to it a false claim. The Act is designed to provide a financial reward to persons who aid the Government in ferreting out those who perpetuate fraud against it. *United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 738 (3d Cir.1997). The relator is considered a partial assignee of the Government's damage claim. *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 120 S.Ct. 1858, 1863, 146 L.Ed.2d 836 (2000). As is required under the statute, the complaint was initially filed under seal and not served on the defendant to give the Government an opportunity to decide whether it would intervene in the case.[1] 31 U.S.C. § 3730(b)(2). After granting the Government a series of extensions for some three years and with still no election to intervene, the court determined that further delay was unwarranted. As a result, we unsealed the record on February 9, 2001. Thereafter, an amended complaint was served on Rite Aid.

I.

Rite Aid, in its motion to dismiss under Rule 12(b)(1), contends we lack subject

---

1. The complaint was filed on December 19, 1997. An amended complaint was filed on April 23, 1998.

matter jurisdiction. It relies on the following language of the False Claims Act:

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions ... from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

The Act defines "original source" as:

an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(B).

■ Rite Aid argues that the action was "based upon public disclosure of allegations or transactions from the news media." In *United States ex rel. Mistick PBT v. Housing Authority of the City of Pittsburgh*, 186 F.3d 376, 388 (3d Cir. 1999), our Court of Appeals held that "a qui tam action is 'based upon' a qualifying disclosure if the disclosure sets out either the allegations advanced in the qui tam action or all of the essential elements of the qui tam action's claims." In support of its position that public disclosure had occurred here, Rite Aid cites numerous newspaper articles about nationwide unscrupulous activities by large pharmacy chains. Specifically, the articles report, among other things, that certain large pharmacy chains are billing the Government for prescriptions that are ordered but never picked up and are returning the prescriptions to inventory without refunding the money to the Government. Significantly, none of the articles ever mentions Rite Aid or any wrongdoing on its part.

■ To support its position that public disclosure has occurred, Rite Aid heavily relies on three appellate decisions from other circuits: (1) *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568 (10th Cir.1995); (2) *United States ex rel. Findley v. FPC–Boron Employees' Club*, 105 F.3d 675 (D.C.Cir.1997); and (3) *United States v. Alcan Electrical and Engineering, Inc.*, 197 F.3d 1014 (9th Cir.1999).

In *Sandia*, the Court of Appeals for the Tenth Circuit held that there was no subject matter jurisdiction because the allegations or transactions had been publicly disclosed. *Id.* at 569–73. Defendant Sandia had been operating one of the Government's nine multi-program laboratories under the administrative oversight of the Department of Energy ("DOE"). Relator, a former DOE employee in its Office of Inspector General, alleged that defendant was improperly "taxing" or earmarking part of the laboratory's appropriation for discretionary research and development. *Id.* Prior to the filing of suit, Congress had held hearings on this taxing practice at these DOE laboratories. Both the hearings and a Government Accounting Office Report had revealed the practice at two of Sandia's eight sister laboratories and the DOE's acquiescence in the practice. Thus, the Government itself was fully aware of the practice. The court noted that improper practices involved "the operating procedures of nine, easily identifiable, DOE-controlled, and government-owned laboratories." *Id.* at 572. Under the circumstances, the court held that there had been public disclosures to the Government of the alleged fraud.

*FPC–Boron*, on which Rite Aid also relies, involved improper use of revenue earned from vending machines at Government employees' clubs on federal property. Based on a previously issued Comptroller General Opinion, certain legislative histo-

ry, and a Federal Circuit Court opinion, the Court of Appeals for the District of Columbia Circuit concluded that the relator's "allegations ... substantially repeat what the public already knows and add only the identity of particular employees' clubs engaged in the questionable and previously documented generic practice." *FPC–Boron,* 105 F.3d at 687. The court therefore upheld the dismissal of the qui tam action on the ground of public disclosure.

Finally, Rite Aid cites *Alcan.* Relator first brought an action not under seal and shortly thereafter filed a qui tam action under seal. He alleged that a local union and area contractors had conspired to file false statements with the Government. The statements allegedly certified that the area contractors were paying the prevailing wage rates when they were actually deducting 2.5% of the wages and passing that portion on to the union. In the first complaint, not under seal, only one of the contracts had been identified. Finding that this case was similar to *Sandia,* the Court of Appeals for the Ninth Circuit affirmed the dismissal for lack of jurisdiction because of the public disclosure in the first complaint. The court stated, "Here the [first] complaint alleged a narrow class of suspected wrongdoers—local electrical contractors who worked on federally funded projects over a four-year period ... [who] were required by statute to file certified payrolls with the government on a weekly basis." *Alcan,* 197 F.3d at 1019. It continued, "This ready access makes it highly likely that the government could easily identify the contractors at issue." *Id.*

We think the present action more closely approximates *Cooper v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562 (11th Cir.1994). In that case, the relator sued defendant Blue Cross and Blue Shield of Florida, Inc. ("BCBSF") alleging that it was falsely submitting claims to Medicare for payment when it knew that it had responsibility for paying those claims. BCBSF sought dismissal on the ground that reports of Medicare fraud of this kind were widespread. It referenced a 1988 Government Accounting Office report which discussed such fraud and named several insurance companies, although not BCBSF. In refusing to find public disclosure, the court explained:

> Requiring that allegations specific to a particular defendant be publically [sic] disclosed before finding the action potentially barred encourages private citizen involvement and increases the chances that every instance of specific fraud will be revealed. To hold otherwise would preclude any *qui tam* suit once widespread—but not universal—fraud in an industry was revealed. The government often knows on a general level that fraud is taking place and that it, and the taxpayers, are losing money. But it has difficulty identifying all of the individual actors engaged in the fraudulent activity.... This casting of a net to catch all wrongdoers is precisely where the government needs the help of its "private attorneys general".

*Id.* at 566.

The courts in *FPC–Boron* and *Sandia* both distinguished the cases before them from *Cooper* on the ground that they involved easily discoverable fraud at Governmental facilities. Both found "little similarity" between delving into the transactions of private insurance companies or defense contractors on the one hand and government-owned laboratories and federal employee organizations on federal property on the other. *See FPC–Boron,* 105 F.3d at 687; *Sandia,* 70 F.3d at 572. We agree with this distinction. Moreover, in *Alcan,* the first complaint, which was pub-

lic, precisely referred to a conspiracy among local contractors, one of whom was identified, and a particular union in a specific locality. The type of fraud alleged was easily discernable from records supplied to the Government. Rite Aid's situation is quite different. The public allegations of fraud on the part of specific pharmacy chains other than Rite Aid is not public disclosure of fraud at Rite Aid. Any fraudulent acts that occurred at Rite Aid are not of the type that are easily discoverable from public disclosures as were those under the circumstances in *Sandia, FPC–Boron,* and *Alcan.* Thus, under the Third Circuit's definition of "based upon," the present action is not based upon public disclosure of allegations or transactions from the news media. *See Mistick PBT,* 186 F.3d at 388. As a result, we do not need to reach the question of whether relator is an "original source." *See Sandia,* 70 F.3d at 572.

## II.

Rite Aid also argues that, even if this court has subject matter jurisdiction, Friedman's amended complaint fails to plead his claim with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) states that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b).

The court has reviewed the amended complaint and found it to be sufficiently detailed. Therefore, Rite Aid's motion to dismiss based on Rule 9(b) will be denied.

## III.

Finally, Rite Aid's motion to dismiss raises constitutional challenges that address the role of a relator in a qui tam action. The general thrust of these arguments is that a qui tam action interferes with the functions and duties of the Executive Branch and undermines Government protection of the public treasury. Specifically, Rite Aid asserts that allowing this action to proceed in the absence of Government intervention would violate the Appointments and Due Process Clauses of the Constitution and the separation of powers doctrine. Rite Aid acknowledges that the False Claims Act has successfully withstood constitutional scrutiny among the Courts of Appeals that have addressed the issues, but it nevertheless requests that this court reach a different conclusion. After carefully evaluating Rite Aid's constitutional concerns, we conclude, as have the other courts that have passed on these issues, that each of them is without merit.[2]

Rite Aid's first constitutional challenge is based upon the Appointments Clause of the Constitution, which provides:

> [The President] ... shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.

■ Rite Aid claims that a qui tam action improperly vests prosecutorial power

---

**2.** In *Stevens,* the Supreme Court specifically reserved for a later day, the question whether

the False Claims Act violates the Appointments Clause. 120 S.Ct. at 1865 n. 8.

in a private relator. It argues that this conveyance of power unconstitutionally transforms the relator into an "Officer of the United States" and thus violates the Appointments Clause, which prohibits Congress from appointing officers of the United States. *See Buckley v. Valeo*, 424 U.S. 1, 127–132, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

However, a relator in a qui tam action is merely a representative agent of the Government, not an appointed "officer." *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 755–757 (5th Cir.2001); *Stevens*, 120 S.Ct. at 1862. Over a century ago, the Supreme Court distinguished an officer from a relator, whose "position is without tenure, duration, continuing emolument, or continuous duties." *Auffmordt v. Hedden*, 137 U.S. 310, 327, 11 S.Ct. 103, 34 L.Ed. 674 (1890). "[A]t a minimum, a continuing and formalized relationship of employment with the United States Government" must exist for one to be an officer. *Riley*, 252 F.3d at 757. No such employment relationship exists with qui tam relators. Furthermore, "[a]lthough a relator may sue in the government's name, the relator is not vested with governmental power ... [and] the government may take complete control of the case if it wishes." *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994); *see United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 746 (9th Cir.1993); *United States ex rel. Burch v. Piqua Eng'g, Inc.*, 803 F.Supp. 115 (S.D.Ohio 1992). Since a relator is only a representative of the Government and not an "officer," the False Claims Act does not violate the Appointments Clause.

■ Rite Aid next asserts that the False Claims Act violates the Due Process Clause of the Fifth Amendment to the Constitution, which reads in relevant part: "No person shall ... be deprived of life,

liberty, or property, without due process of law. ..." U.S. Const. amend. V. Rite Aid contends that when prosecutorial power is allotted to a relator on behalf of the United States, an inherent conflict exists between the relator's individual financial interests and the overall administration of justice. This conflict, according to Rite Aid, compromises the defendant's right to due process of law. Under the False Claims Act, the relator "is simply the statutorily designated agent" who brings suit on behalf of the United States. *Stevens*, 120 S.Ct. at 1862. The Supreme Court has determined that the relator's bounty— usually 15–25% if the Government intervenes and 25–30% if it does not, as provided in 31 U.S.C. §§ 3730(d)(1) and (d)(2)— "is simply the fee he receives *out of the United States' recovery* for filing and/or prosecuting a successful action on behalf of the Government." *Stevens*, 120 S.Ct. at 1862. Similarly, this Circuit has opined that the compensation a relator receives is an appropriate incentive and reward for aiding the Government. *See Dunleavy*, 123 F.3d at 738. Therefore, the right of defendants to due process is not infringed by the relator's financial reward.

■ Finally, Rite Aid claims that qui tam actions violate the separation of powers doctrine. This doctrine, which is inherent in the structure of Articles I, II and III of the Constitution, prevents one branch of Government from interfering with the powers and responsibilities of other branches. In the often cited case of *Humphrey's Executor v. United States*, 295 U.S. 602, 629, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), the Supreme Court stressed "[t]he fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others."

Rite Aid argues that with the power given to a relator under the False Claims

Act, Congress has usurped the power of the executive branch faithfully and properly to execute federal law. According to Rite Aid, without Government intervention, the Act allocates too much power over the litigation to the relator, a private person.[3] However, this claim is unfounded because even when the Government does not intervene in the action, its involvement is not thereafter precluded. *See Riley,* 252 F.3d at 755. For instance, the Government has the option to "dismiss the action notwithstanding the objections of the [relator] if the [relator] has been notified by the Government of the filing of the motion and the court has provided the [relator] with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). The Government also retains the right to request that it "be served with copies of all pleadings filed in the action" and "supplied with copies of all deposition transcripts." 31 U.S.C. § 3730(c)(3). In addition, "the court, without limiting the status and rights of the [relator], may ... permit the Government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3); *see, e.g., Boeing,* 9 F.3d at 746. Furthermore, the Government "may settle the action with the defendant notwithstanding the objections of the [relator] if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all circumstances." 31 U.S.C. § 3730(c)(2)(B).[4] Therefore, even if initially it declines to intervene, the Government retains a significant right to influence and participate in a qui tam action.

■ The Supreme Court has noted that the Framers of the Constitution "did not require—and indeed rejected—the notion that the three Branches must be entirely separate and distinct." *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Where the functions of two coordinate branches of Government overlap without intrusion, there is no constitutional violation. *See id.* Since that is the situation here, we reject Rite Aid's contention that the False Claims Act violates the separation of powers doctrine.

### IV.

In conclusion, the motion of Rite Aid to dismiss plaintiff's complaint will be denied.

### ORDER

AND NOW, this 8th day of June, 2001, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant Rite Aid Corporation to dismiss the amended complaint of plaintiff Larry B. Friedman, in the name of the United States Government, is DENIED.

---

**3.** In support of its argument, Rite Aid cites the dissent in *United States ex rel. Rodgers v. Arkansas,* 154 F.3d 865, 869 (8th Cir.1998) (Panner, J., dissenting).

**4.** For a discussion of the Government's options in a qui tam action after it declines to intervene, *see Riley,* 252 F.3d at 755 and *Boeing,* 9 F.3d at 746.