EAGAN, J.,
dissenting in part and concurring in part and in the result.
I dissent only on the basis of the majority’s determination that the FCA does not require the Government to intervene prior to moving to dismiss a qui tam action. In my view, where the Government has declined to intervene during- the sixty-day seal period, it is required to intervene upon a showing of good cause under 31 U.S.C. § 3730(c)(3) before moving to dismiss the action. I believe a plain reading of the statute requires it, canons of statutory construction support such a result, and such a reading does not render the FCA unconstitutionally infirm.
The majority’s focus on the provision of the statute which permits the Government to dismiss a qui tam action, 31 U.S.C. § 3730(c)(2)(A), disregards the surrounding provisions and the context in which the dismissal provision appears. Subsection (c)(2) relates to (c)(1), which provides:
If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action subject to the limitations set forth in paragraph (2).
31 U.S.C. § 3730(e)(1)(emphasis added). Thus, subsection (c)(2) contains limitations applicable only to subsection (c)(1), the provision relating to the Government’s election to proceed with the action. By their terms, subsections (c)(1) and (c)(2) do not apply where the government elects not to proceed during the seal period. Subsection (c)(3), however, relates to the Government’s election not to proceed, as here. It provides, in relevant part:
If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action.... When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.
Id., § 3730(c)(3). This is the subsection which provides for late intervention by the Government after an initial determination not to proceed.
In effect, the majority’s reading of the statute eviscerates the provision addressing late intervention. Familiar canons of *941 statutory construction direct the court to avoid such an interpretation. E.g., Oxy USA, Inc. v. Babbitt, 268 F.3d 1001, 1006 (10th Cir.2001) (“We must avoid, whenever possible, a statutory interpretation that would ‘render superfluous other provisions in the same enactment.’ ”) (quoting Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 877, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991)); New Mexico Cattle Growers Ass’n v. United States Fish and Wildlife Serv., 248 F.3d 1277, 1285 (10th Cir.2001) (“We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous.”) (quoting Bridger Coal Co./Pac. Minerals, Inc. v. Director, Office of Workers’ Compensation Programs, 927 F.2d 1150, 1153 (10th Cir.1991)). Congress clearly intended to provide for late intervention by the Government.
Further, this court has long acknowledged: “The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” In re Wise, 346 F.3d 1239, 1241 (10th Cir.2003) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808, (1997)); see Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222, 297 F.3d 1146, 1151 (10th Cir.2002) (citations omitted) (“To determine the plain meaning of the statute, we must consider the statute as a whole.”); Wyoming v. United States, 279 F.3d 1214, 1230 (10th Cir.2002) (To construe legislation, the court examines “the purpose, structure, and legislative history of the entire statute.”) (quoting California v. Federal Energy Regulatory Comm’n, 495 U.S. 490, 504, 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990)); In re Overland Park Financial Corp., 236 F.3d 1246, 1252 (10th Cir.2001) (“When interpreting statutory language, this court ‘must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.’ ”) (citation omitted.); United States v. Nichols, 184 F.3d 1169, 1171 (10th Cir.1999) (“When interpreting statutory language, however, appellate courts must examine the ... language in context, not in isolation.”). Here, the context, design, and structure of the statute as a whole indicate that the government has unfettered discretion to dismiss if it intervenes within the sixty-day seal period, but not after.
The legislative history cited by the majority speaks to the circumstances of this case: “In those situations where new and significant evidence is found and the Government can show ‘good cause’ for intervening, paragraph (2) provides that the court may allow the Government to take over the suit.” S. Rep. 99-345, at 26-27 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5292. This legislative history relates to the section of the amendment which became subsection (c)(3) of the statute. The legislative history is clear that late intervention requires good cause and even suggests that it requires new and significant evidence. Contrary to the conclusion of the majority, taking over the suit does not mean that intervention under subsection (e)(3) is permitted only if the government plans to proceed. Such is too expansive a reading of the legislative histoiy. It does mean taking control of the action— which inherently includes the ability to seek dismissal.
Examination of the statutory language in context and in light of the legislative history does not place the FCA on unsteady constitutional ground. The Take Care Clause of the United States Constitution entrusts the Executive Branch with the duty to “take Care that the Laws be faithfully executed.... ” U.S. Const, art. II, § 3. The FCA vests in the Executive *942 Branch sufficient control over qui tarn actions; I do not read it to vest the Executive Branch with absolute control where the Executive Branch effectively abdicates its duty to control the litigation by failing to intervene initially within the seal period or to show good cause for late intervention. The Government is not bound unnecessarily by a requirement to intervene with a showing of good cause before moving to dismiss a qui tarn action.
To the extent the Government’s motion to dismiss can be construed as an implied motion to intervene, the issue becomes, then, whether the Government showed good cause for intervention. The district court found that mere intent of the Government to dismiss the case constitutes good cause. Such finding effectively eliminates the need to intervene at all, a finding which, again, renders the FCA’s late intervention provision superfluous. I therefore disagree with the district court as to what constitutes good cause. In my view, the Government did show good cause by demonstrating that the lawsuit would compromise national security interests and delay the cleanup and closure of Rocky Flats.
I recognize that there is persuasive authority from other jurisdictions to support the majority’s conclusion as to intervention, but I believe that those courts have engaged in iconoclastic statutory construction to reach that conclusion. As the majority acknowledges, the decision in Swift v. United States, 318 F.3d 250, 251 (D.C.Cir.), cert. denied, 539 U.S. 944, 123 S.Ct. 2622, 156 L.Ed.2d 630 (2003), concerned a government motion to dismiss during the seal period, and the language in other cases occurs in dicta, Kelly, 9 F.3d at 753 n. 10; United States ex rel. Friedman v. Rite Aid Corp., 152 F.Supp.2d 766, 772 (E.D.Pa.2001); Juliano v. Fed. Asset Disposition Ass’n, 736 F.Supp. 348, 351 (D.D.C.1990), or simply ignores the language in 31 U.S.C. § 3730(c)(3) that the court may permit late intervention “without limiting the status and rights of the person initiating the action.” See Sequoia, 151 F.3d at 1145 (9th Cir.1998). The Juli-ano court recognized that subsection (c)(2)(A), “by its placement in the statute, appears to pertain to actions in which the government has already intervened,” but reasoned that the “distinction is not crucial.” 736 F.Supp. at 351. In my opinion, the distinction is crucial. If Congress intended the construction placed upon the statute by these courts, it would have chosen an alternative placement or omitted the limitations present in the statutory language.
The majority declined to “engraft a good cause requirement on a government motion to dismiss.” Maj. Op. 935. I believe that its holding as to intervention essentially engrafts the Sequoia standard on a government motion to intervene after the seal period, and that such action contravenes the express language of the statute, as well as Congressional intent. For these reasons, I respectfully dissent. However, I concur in the result because, here, the Government has shown good cause to intervene under 31 U.S.C. § 3730(c)(3), as the district court found, and the reasons for intervention support dismissal under any standard.